UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

FRANKLIN MENDEZ,

Plaintiff,

- against -                                                     23-cv-8816 (LGS)

THE CITY UNIVERSITY OF NEW YORK/JOHN JAY
COLLEGE OF CRIMINAL JUSTICE,

Defendant.

———————————————————————

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING
ORDER**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
28 Liberty Street
New York, New York 10005

CHRISTOPHER COULSTON
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page (s)**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 1

    a.  WebAssign .................................................................................................................. 3

    b.  Size 14 Font for All Course Materials ..................................................................... 4

    c.  Digital Textbook for Ethics and Technology Class .............................................. 5

STANDARD OF REVIEW ..................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

    I.      PLAINTIFF HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS ............................................................................................... 7

        A.  Plaintiff Lacks Standing and His Claims are Moot ..................................... 7

            1.  Plaintiff Lacks Standing ......................................................................... 8

            2.  Plaintiff's Claims Are Moot ................................................................... 12

        B.  Plaintiff Fails to State a Claim Under the ADA or the Rehab Act ............ 12

        C.  Plaintiff's Retaliation Claim is Vague and Seeks Improper Relief ............ 14

    II.    PLAINTIFF CANNOT ESTABLISH IRREPARABLE HARM WITH RESPECT TO THE RELIEF SOUGHT ....................................................... 14

    III.   THE BALANCE OF EQUITIES TIPS IN FAVOR OF DEFENDANT................... 15

    IV.   PLAINTIFF SEEKS THE ULTIMATE RELIEF IN REQUESTING A REPORTING MECHANISM ....................................................................... 16

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*,
 60 F.4th 16 (2d Cir. 2023) ................................................................................................14

*Amador v. Andrews*,
 655 F.3d 89 (2d Cir. 2011) ..................................................................................................8

*Azelyant v. B. Manischewitz Co.*,
 No. 98-CV-2502 (ILG), 2000 U.S. Dist. LEXIS 2192 (E.D.N.Y. Jan. 12, 2000) ..................12

*Azim v. Vance*,
 530 F. App'x 44 (2d Cir. 2013) ............................................................................................8

*Boucher v. Syracuse Univ.*,
 164 F.3d 113 (2d Cir. 1999) ...............................................................................................12

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ................................................................................................................8

*City of Newburgh v. Sarna*,
 690 F. Supp. 2d 136 (S.D.N.Y. 2010) .............................................................................6, 15

*Clissuras* v. *City Univ. of N.Y.*,
 359 F.3d 79 (2d Cir. 2004) ...................................................................................................1

*Cty. of Suffolk v. Sebelius*,
 605 F.3d 135 (2d Cir. 2010) .................................................................................................7

*Cummings v. Premier Rehab Keller P.L.L.C.*,
 596 U.S. 212 (2022) ...........................................................................................................13

*Dean v. Univ. at Buffalo School of Medicine and Biomedical Scis.*,
 804 F.3d 178 (2d Cir. 2015) ...............................................................................................13

*Demirayak v. City of New York*,
 746 F. App'x 49 (2d Cir. 2018) ............................................................................................7

*Democratic Congressional Campaign Comm. v. Kosinski*,
 614 F.Supp 3d 20 (S.D.N.Y. 2022) ....................................................................................11

*Deshawn E. v. Safir*,
 156 F.3d 340 (2d Cir. 1998) .................................................................................................9

*Dessaint v. Lignel*,
    584 F. App'x 30 (2d Cir. 2014) ............................................................. 7-8

*Doyle v. Midland Credit Mgmt., Inc.*,
    722 F.3d 78 (2d Cir. 2013)...................................................................... 8

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)............................................................................ 15

*Gomez v. Coughlin*,
    685 F. Supp. 1291 (S.D.N.Y. 1988)..................................................... 12

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007).................................................................... 6

*Hanson Trust PLC v. SCM Corp.*,
    774 F.2d 47 (2d Cir. 1985).................................................................... 6

*Holiday Inns of America, Inc. v. B & B Corp.*,
    409 F.2d 614 (3d Cir. 1969)................................................................ 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................. 7

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012).................................................................... 8

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
    75 F. Supp. 3d 592 (S.D.N.Y. 2014)................................................. 6, 15

*Marcavage v. City of New York*,
    689 F.3d 98 (2d Cir. 2012)................................................................. 8-9

*Montgomery v. District of Columbia*,
    No. 181928, 2022 WL 1618741 (D.D.C. May 23, 2022) (ADA)........................... 13

*Nken v. Holder*,
    556 U.S. 418 (2009).............................................................................. 6

*Parkway Hosp. v. Shah*,
    460 F. App'x 21 (2d Cir. 2012) ......................................................... 12

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984).............................................................................. 13

*Platt v. Village of Southampton*,
    391 F. App'x 62 (2d Cir. 2010) ........................................................... 8

*Purgess v. Parauda*,
   2021 WL 2269540 (S.D.N.Y. June 3, 2021) ........................................................................14

*Rosen v. Siegel*,
   106 F.3d 28 (2d Cir. 1997)................................................................................................14

*Saget v. Trump*,
   375 F. Supp. 3d 280 (E.D.N.Y. 2019) ...............................................................................15

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010).............................................................................................6, 15

*Spencer v. Kemna*,
   523 U.S. 1 (1998)...............................................................................................................8

*State of N. Y. v. Nuclear Regul. Comm'n*,
   550 F.2d 745 (2d Cir. 1977)..............................................................................................14

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ...................................................................................................7

*Triebwasser & Katz v. AT&T Co.*,
   535 F.2d 1356 (2d Cir. 1976).............................................................................................6

*United States v. Blackburn*,
   461 F.3d 259 (2d Cir. 2006)...............................................................................................8

*United States v. Mercurris*,
   192 F.3d 290 (2d Cir. 1999)...............................................................................................7

*Winter v. Natural Resources Defense Counsel*,
   555 U.S. 7 (2008)...............................................................................................................6

*You, Xiu Qing v. Nielsen*,
   321 F. Supp. 3d 451 (S.D.N.Y. 2018).................................................................................6

**Federal Constitution**

Article III ...................................................................................................................................7

U.S. Const XI amend. ...............................................................................................................13

**State Statutes**

N.Y.S. Educ. Law § 6202(5)......................................................................................................1

**Federal Statutes**

29 U.S.C. § 701, *et seq.,* (Rehabilitation Act of 1973) ........................................................... passim

42 U.S.C. § 12101, *et seq.* (Americans with Disabilities Act of 1990 ("ADA"))*,* ............... passim

**Rules**

Fed R. Civ. P.
   Rule 65 ....................................................................................................................................1, 14

Defendant, the City University of New York ("CUNY") (sued herein as John Jay College)[1], respectfully submits this memorandum of law, along with the accompanying declaration from Dr. Elena Beharry and its exhibits, in opposition to Plaintiff's motion for a preliminary injunction and temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff, a visually impaired student at the John Jay College of Criminal Justice, seeks injunctive relief and a temporary restraining order requiring the College to afford him certain accommodations in his courses pursuant to the Americans with Disabilities Act of 1990 (the "ADA") and the Rehabilitation Act of 1973 (the "Rehab Act"). But Plaintiff's motion is not only improper; it is unnecessary. As described below and in the accompanying declaration of Dr. Beharry, Defendant has already provided the requested accommodations to Plaintiff addressing all of the issues raised in his motion. Plaintiff's requested relief is therefore moot. As argued below, Plaintiff cannot meet his burden in demonstrating that he is likely to succeed on the merits of his complaint; he will not suffer irreparable harm if the motion is denied; and the balance of equities tips clearly in favor of the Defendant. For all of these reasons, Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff is a student at the John Jay College of Criminal Justice. Complaint, ECF No. 1 ("Compl."), p. 3. Plaintiff alleges that he suffers from pathological myopia and large angle estropia, which impairs his vision. *Id.*, p. 1. Because of this impairment, Plaintiff has sought a number of accommodations from John Jay to assist him with his coursework. The Office of Accessibility Services is responsible for responding to requests for accommodations from students.

---

[1]     The John Jay College of Criminal Justice is a senior college of CUNY and is not a "legally cognizable entity apart from CUNY." *Clissuras* v. *City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004); N.Y. Educ. Law § 6202(5).

Beharry Decl., ¶ 1.   In February 2023, Plaintiff reached out to the Office of Accessibility Services and notified them that he would soon be enrolling and would need accommodations due to his visual impairments.  *Id.*, ¶ 2.  Plaintiff specifically requested accommodations "such as assistive technology, note-taking support and extended time for exams."  *Id.*, ¶ 2, Ex. A.   On April 12, 2023, before the start of Plaintiff's first semester, the Office of Accessibility Services completed the intake process and wrote to Plaintiff, explaining that the agreed-upon accommodations for the summer semester would be: (i) priority registration; (ii) extended time on exams and quizzes (double time); (iii) permission to take his exams in a separate location; (iv) assistance of a peer note taker; (v) use of a screen reader; and (vi) use of a computer with ZoomText and Jaws or other assistive technology.  *Id.*, ¶ 6, Ex. B.  Plaintiff wrote back that same day, confirming his agreement with those accommodations.  *Id.*  The next day, April 13, 2023, based on additional medical documentation, John Jay added two more accommodations: (vii) use of a reader; and (viii) use of a scribe.  *Id.*, ¶ 7.  That same day, Mr. Mendez confirmed his agreement to the two additional accommodations.  *Id.*[2]

In his motion, Plaintiff alleges that he has not received: 1) "accessible technologies and course content," which is a complaint directed at the use of the program WebAssign; 2) a digital

---

[2]     At John Jay, students with accommodations are given accommodations cards, to help them convey to their professors that they are entitled to certain accommodations.  Beharry Decl., ¶ 8.  The administrative staff person who created Plaintiff's card inadvertently created a card reflecting only the accommodations agreed to on April 12.  *Id.*  In other words, the card mistakenly did not include the two accommodations that were added on April 13 after additional medical documentation was received.  *Id.*  The administrative error was noticed and corrected, before the Fall 2023 semester, by a staff member in the Office of Accessibility Services.  *Id.*  Plaintiff was issued a new card, with all of his accommodations listed.  *Id.*  That happened before any of his Fall 2023 classes started, so he was able to use the card to accurately communicate with all of his professors.  *Id.*  Defendant informed Plaintiff of this issue on November 8, 2023.  *Id.*, Ex. C.  Mr. Mendez, unfortunately, incorrectly interprets the existence of two cards as somehow nefarious, although he does not claim that he was not provided with any specific accommodations because of the incorrect details on the initial card.  *See* ECF No. 16.

textbook for his Ethics and Technology class; and 3) large print 14 font for all course materials. ECF No. 3, p. 5.  However, Plaintiff has already received all of these accommodations.

### a. WebAssign

WebAssign is an online learning management system used in several classes at John Jay. Beharry Decl., ¶ 12.  Plaintiff initially complained about WebAssign based on his understanding of another visually impaired individual's issues with using the software.  *Id.*; Compl., pp. 4-5.  As part of the process of determining the appropriate accommodations for Plaintiff, John Jay sought details about Plaintiff's experience with WebAssign to see if there was a way for him to use the software, which would be the least disruptive and most integrative accommodation.  Beharry Decl., ¶ 13.  Plaintiff, unlike the other student, is not completely blind and has confirmed he is able to read materials in a larger font (and, in fact, asks for that in his motion), and he has access to ZoomText software which enlarges the content on a computer screen.  *Id.*; ECF No. 3, p. 1.

Office of Accessibility Services staff met with Plaintiff on August 28, 2023 and showed him how to use WebAssign to access his course materials.  Beharry Decl. ¶ 14.  John Jay asked Plaintiff to let them know if he experienced any problems with the software.  *Id.*  Plaintiff repeatedly objected to using the software despite his inability to identify any specific issue with using the program with his other accommodations.  *Id.*, ¶ 15.  Nonetheless, to resolve the issue, on August 30, 2023, Vice President of Enrollment Management and Student Affairs, Brian Kerr, wrote to Mr. Mendez and assured him that John Jay would not require Mr. Mendez to use WebAssign.  *Id.*, Ex. P.  Director of Accessibility Services, Nadia Griffith-Allen, promptly sent an email as well reiterating that Mr. Mendez would not have to use WebAssign.  ECF No. 3, p. 27.  Plaintiff has not been required to use the software in any of his classes since then.  Beharry Aff., ¶ 15.

### b.  Size 14 Font for All Course Materials

On August 30, 2023, the same day that Plaintiff was told that he would not have to use WebAssign, Vice President and Executive Counsel, Tony Balkissoon, contacted the chair of the math department to figure out an alternative to using the program.  Beharry Decl., ¶ 16.  The chair spoke to Mr. Mendez's professor, who conveyed that WebAssign was only being used to administer homework.  *Id.*  The professor said that the assignments could be printed out from WebAssign and that he would accept hard copies of Mr. Mendez's completed assignments.  *Id.*

On September 12, 2023, the former Director of the Office of Accessibility Services emailed the office staff to add that when Mr. Mendez needs items printed out, the office staff should also enlarge the material, so it is printed in the equivalent of 14-point font.  *Id.*, ¶ 17, Ex. H.  In early October 2023, Mr. Mendez again raised concerns about WebAssign and receiving his assignments in size 14 font. *Id.*, ¶ 18, Ex. I.  Plaintiff was advised that he needed to bring any assignments to the Office of Accessibility Services for printing, although he claimed that he did not recall ever being so told.  *Id.*

To further understand Mr. Mendez's concerns, Dr. Beharry set up a meeting on October 13, 2023 with Plaintiff, his case specialist in the Office of Accessibility Services, and the professor, Sam Baruch to discuss printing out materials.  *Id.*, ¶ 19.  To recap the meeting and the accommodation that was in place, on October 16, 2023, Dr. Beharry wrote to Plaintiff, and reminded him that his homework would be printed for him so long as he "let us know what the homework assignments are." *Id.*, ¶ 20; Ex. K.  After that time, with concrete assignments to print and enlarge, the office quickly troubleshooted technological issues and successfully printed and enlarged homework assignments for Plaintiff who confirmed that the office printing his assignments, with enlarged text on 11"x17" paper, was sufficient for him.  *Id.*, ¶ 21; Ex. L.

4

### c. Digital Textbook for Ethics and Technology Class

Plaintiff has also requested electronic versions of his textbooks as an accommodation. ECF No. 3, p. 1. But again, alternative versions have already been provided. On August 21, 2023, Mr. Mendez was sent an electronic version of his textbook for his computer science class, CSCI 271. Beharry Decl., ¶ 22. On August 30, 2023, Mr. Mendez was sent an electronic version of his textbook for his math class, MAT 141. *Id.*, ¶ 23. The next day, Mr. Mendez confirmed that he received it and successfully opened it. *Id.*

Plaintiff also requested an electronic version of his PHI 216 textbook, which is the "Ethics and Techonogocal" (sic) text cited in his motion. *Id.*, ¶ 24; ECF No. 3, p. 1. On August 15, 2023, the Office of Accessibility Services case specialist emailed the professor for PHI-216 to ask about the textbook for the class so that a PDF version could be procured. Beharry Decl., ¶ 24. The publisher was unwilling to provide a digital pdf version, but Plaintiff was provided with a Microsoft Word version of the textbook and a large-print version, which were the only available substitutes. *Id.* On September 11, 2023, Plaintiff asked for the book in PDF format specifically, saying that the previous format was "inaccessible" to him. *Id.* Plaintiff has not explained how the Word version or a large-print version is not accessible, especially since Plaintiff can enlarge text on his computer screen. *Id.* Despite this alleged issue, Plaintiff has stated that he does not need tutoring services for PHI 216, and has performed well in the class. *Id.*, ¶ 25

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Despite receiving all of the reasonable accommodations requested, Plaintiff brought this action on October 6, 2023, alleging, primarily, that CUNY has not provided him with reasonable accommodations for his visual impairment under the ADA or the Rehab Act. ECF No. 1. Plaintiff simultaneously filed a proposed Order to Show Cause, seeking certain accommodations during the

pendency of this action.  ECF No. 3.  On November 3, 2023, the Court signed Plaintiff's Order to

Show Cause, and setting a conference date of December 6, 2023 for the Order to Show Cause

following an extension request by Defendant.  ECF No. 9.  Defendant now opposes Plaintiff's

motion.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as of right," *Winter*

*v. Natural Resources Defense Counsel,* 555 U.S. 7, 24 (2008), because it is "one of the most drastic

tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d

60, 66 (2d Cir. 2007) (quoting *Hanson Trust PLC v. SCM Corp.,* 774 F.2d 47, 60 (2d Cir. 1985)).

Plaintiff cannot prevail on a motion for a preliminary injunction unless he establishes four

elements: (1) a likelihood of success on the merits, (2) that the plaintiff is likely to suffer irreparable

injury in the absence of preliminary injunctive relief, (3) that the balance of hardships tips in the

plaintiff's favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Salinger*

*v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010); *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75

F. Supp. 3d 592, 604 (S.D.N.Y. 2014). The final two factors "merge when the Government is the

opposing party." *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 462 (S.D.N.Y. 2018) (citing *Nken*

*v. Holder*, 556 U.S. 418, 435 (2009)).

Further, it is well established that the purpose of a preliminary injunction "is not to award

the movant the ultimate relief sought in the suit but is only to preserve the status quo." *City of*

*Newburgh v. Sarna*, 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010) (internal quotation omitted); *see*

*also Triebwasser & Katz v. AT&T Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976) (reversing issuance of

preliminary injunction that "would in effect give the plaintiffs substantially the ultimate relief they

seek ... before there has been any trial of the issues" and explaining that "the normal function of

the preliminary injunction is to maintain the status quo pending a full hearing on the merits"). Indeed, when a plaintiff seeks a preliminary injunction that would provide the ultimate relief sought in the underlying action, a heightened preliminary injunction standard applies. *See Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018), *cert. denied sub nom.*, 139 S. Ct. 1600 (2019); *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). Plaintiff fails to satisfy this burden.

**ARGUMENT**

## I.    PLAINTIFF HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    Plaintiff Lacks Standing and His Claims are Moot

A fundamental bedrock of the federal judicial system is that "'Article III of the Constitution limits federal courts' authority—that is, our subject matter jurisdiction—to disputes involving live cases and controversies.'" *Dessaint v. Lignel*, 584 F. App'x 30, 30 (2d Cir. 2014) (summary order) (quoting *Cty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)).  "'In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999)).

These requirements are manifested in the separate but interrelated doctrines of standing and mootness.  For Article III standing, a party must have suffered an injury in fact that is fairly traceable to the challenged action of the defendant, and that will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "While the standing doctrine evaluates a litigant's personal stake at the onset of a case…the mootness doctrine requires that 'standing persists throughout the life of a lawsuit.'"  *Azim v. Vance*, 530 F. App'x 44, 46 (2d

7

Cir. 2013) (summary order) (quoting *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011)).  "Thus, 'if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case' as moot."  *Dessaint*, 584 F. App'x at 30 (quoting *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006)).  For standing and mootness, a plaintiff's failure to satisfy these requirements deprives the federal courts of subject matter jurisdiction to hear his or her claim.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (standing);  *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (mootness).

For the reasons described below, Plaintiff's claims for injunctive relief violate both the standing and mootness doctrines and, accordingly, Plaintiff fails to meet his burden of establishing jurisdiction.  *Blackburn*, 461 F.3d at 261 ("'It is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'") (quoting *Spencer v. Kemna*, 523 U.S. 1 (1998)).  Plaintiff's claim for injunctive relief must therefore be denied.

1. Plaintiff Lacks Standing

In order to have standing "[t]o obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, inter alia, 'a sufficient likelihood that he or she will again be wronged in a similar way.'"  *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  As a result, "[i]t is well-settled that 'a plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.'"  *Platt v. Village of Southampton*, 391 F. App'x 62, 66 (2d Cir. 2010) (summary order) (quoting *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998));  *see also Marcavage*, 689 F.3d at 103 ("In

8

establishing a certainly impending future injury, a plaintiff cannot rely solely on past injuries.").
More specifically, "the plaintiff must establish how he or she will be injured prospectively and that
the injury would be prevented by the equitable relief sought." *Id.*

Here, Plaintiff cannot demonstrate the requisite likelihood of future harm for the injunctive
relief he seeks because his purported injuries took place in the past. Specifically, Plaintiff seeks:
(1) "accessible technologies" (specifically, an accommodation that he does not need to use
WebAssign), (2) a digital text book for his Ethics and Technology class, and (3) the provision of
"Large Print 14 font for course material." ECF No. 3, p. 1. But the documents submitted by
Plaintiff and the Beharry affidavit and its exhibits show that Plaintiff has already received all of
this requested relief, plus additional accommodations and services. Indeed, the emails submitted
by Plaintiff with his motion papers show that Plaintiff has not been required to use WebAssign,
that he has been provided all course content in large, size 14 font, and he has received the requested
tutors in his courses. *See* ECF No. 3, pp. 33-34 (email from Nadia Griffith providing Plaintiff with
the name and contact information for a tutor); p. 28 (email from Brian Kerr to Plaintiff dated Aug.
30 2023 stating "You will not be required to use the Web Assign software in your math course.");
p. 27 (email from Nadia Griffith to Plaintiff dated August 30, 2023 stating "I understand that you
have some concerns regarding the WebAssign software used in the math class. We will not require
you to use this software, and will provide the paper version for assignments."); p. 16 (email from
Nadia Griffith to Plaintiff dated September 11, 2023 stating: "Now that we know the font size of
the materials that are being requested by Lisa Dunkley, Tutor we will print everything in the font
size that you requested. Most definitely the white board will be available for your use during
tutoring.").

The Director of Accessibility Services has confirmed that Plaintiff has in fact received all three of the requested accommodations. Plaintiff was not required to use WebAssign despite the fact that he did not articulate a specific reason why he could not use it. Beharry Decl., ¶¶ 12-15. Plaintiff was provided with large-print printouts of assignments so long as he asked the Office of Accessibility Services for printing. *Id*., ¶¶ 16-21. Finally, Plaintiff was provided with electronic PDF versions of his textbooks for all his classes except PHI 216, for which no PDF format was available. *Id.*, ¶¶ 22-25. Instead, Plaintiff was offered a Word version of the textbook and a large-print version. Plaintiff has not explained how the Word version or a large-print version is not accessible, especially since Plaintiff can enlarge text on his computer screen and already uses large-print format for his assignments. *Id.*, ¶¶ 16-25.

Plaintiff's most recent complaints also fail to establish an ongoing injury or risk of future injury. *See* ECF Nos. 15-16. Plaintiff's November 6 letter to the Court alleges that John Jay fraudulently changed his accommodation card and back-dated it to August 21, 2023. ECF No. 16, p. 2. Plaintiff claims that "exam via computer/typing only" and "reader and use of scribe" were a "fraudulent act" and "part of a broader pattern of document falsification by the college." *Id.* But as the emails between John Jay and Plaintiff demonstrate, these additional accommodations were agreed upon in April 2023. *See* Beharry Decl., Ex., B. Dr. Beharry has also explained that the original card showing Plaintiff's accommodations inadvertently excluded the two added on April 13, 2023 and was corrected prior to the Fall semester. *Id.*, ¶ 8. Further, except for vaguely pointing to some conspiracy against him, Plaintiff does not allege that the inaccurate card prevented him from receiving a reasonable accommodation based on his disability or that he was ever denied any services because of it. ECF No. 16.

Nor does Plaintiff's subsequent letter articulate any valid basis for injunctive relief. Plaintiff's November 8, 2023 letter complains primarily that that the proctor for one of his exams engaged in a "hushed conversation" with Dr. Beharry prior to the exam, which purportedly "compromised [his] trust in receiving an unbiased proctoring experience." ECF No. 15, pp. 1-2. He also complains that the proctor left the door open for some portion of the exam.  *Id.*  But it is unclear how any of these allegations affect the reasonable accommodations offered to Plaintiff on account of his visual impairment.  Plaintiff also complains that he failed to receive "the necessary magnification equipment" required for his exam, but Plaintiff did receive the equipment once he asked for it, left the exam room with more than an hour to spare, and even he acknowledges the failure was to "***initially*** provide assistive technology."  Beharry Decl., ¶ 27, Ex. 10; ECF No. 15, p. 2.  There was therefore, again, no failure to provide a reasonable accommodation, and Plaintiff cannot seek emergency relief (or pursue his claim at all) when he acknowledges that he received the requested accommodation and can articulate no harm from not having received a magnifying glass before he asked for one.

Thus, to the extent Plaintiff alleges an injury due to a lack of accommodations, he fails to demonstrate that this purported injury is ongoing or that he is like to "again be wronged in a similar way."  To the contrary, the College's actions show a concerted effort to accommodate Plaintiff and address the needs related to his visual impairment.[3]  Because Plaintiff's accessibility concerns have thus already been addressed, he cannot demonstrate a likelihood of future imminent injury and therefore lacks standing to obtain the prospective relief sought in his motion. *See Democratic*

---

[3]    Plaintiff's claim for retaliation fails for this reason as well.  Far from retaliating against Plaintiff based on his requests for accommodations, the College has promptly addressed each request.

*Congressional Campaign Comm. v Kosinski*, 614 F.Supp 3d 20, 43 (S.D.N.Y. 2022) (denying injunction in part where Plaintiff failed to demonstrate a future imminent injury).

    2.  <u>Plaintiff's Claims Are Moot</u>

A claim is moot when the plaintiff "can no longer obtain any legally cognizable benefit from the declaratory and injunctive relief it seeks." *Parkway Hosp. v. Shah*, 460 F. App'x 21, 23 (2d Cir. 2012) (summary order). Plaintiff no longer stands to benefit from the relief sought in this lawsuit for the simple reason that, as described above, steps have already been taken to ensure that he is provided with reasonable accommodations. In other words, the very outcome sought by Plaintiff has already been achieved. His claims are therefore moot. *See, e.g., Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("We, therefore, hold that insofar as plaintiffs' complaint sought a varsity lacrosse team, the claim is now moot, given that the team has been created . . . ."); *Azelyant v. B. Manischewitz Co.*, No. 98-CV-2502 (ILG), 2000 U.S. Dist. LEXIS 2192, at *24 (E.D.N.Y. Jan. 12, 2000) ("Plaintiffs provide no evidence to support their contention that a TTY device is essential for them to carry out their work duties or that [defendant] is required by law to provide such a device. Nonetheless, this claim is moot because in April 1998, [defendant] installed a pay TTY telephone, next to the standard pay phone, which is available for use by plaintiffs on the same basis as the payphones are available to hearing workers."); *Gomez v. Coughlin*, 685 F. Supp. 1291, 1298 n.3 (S.D.N.Y. 1988) ("Inasmuch as plaintiff has already been transferred to a medium security facility, albeit not the one of plaintiff's choice, plaintiff's request for injunctive relief is denied as moot.").

**B.  Plaintiff Fails to State a Claim Under the ADA or the Rehab Act**

For the same reasons, Plaintiff fails to state an ADA or Rehab Act claim because, as demonstrated above, the documents provided in support of the Complaint and the declaration of

Dr. Beharry and supporting exhibits plainly contradict Plaintiff's conclusory factual allegations. In the education context, the ADA and the Rehabilitation Act "require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program." *Dean v Univ. at Buffalo School of Medicine and Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015). Accommodations must only be reasonable, and a university does not have to provide a disabled individual with every accommodation requested or the accommodation of the student's choice. *Id.*

To establish a prima facie violation under these acts, a plaintiff must demonstrate "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Dean v Univ. at Buffalo School of Medicine and Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (internal quotes and citations omitted). Since Plaintiff has received every accommodation requested (*see supra*), along with additional support beyond those requests, he has not been denied the opportunity to participate in the educational services offered by John Jay. The only specific request not provided was the PDF version of the PHI 216 textbook, but as already noted, no such version is available and Plaintiff was offered two acceptable alternatives – a Microsoft Word version or a printed version with large text. Beharry Decl., ¶ 24. Plaintiff has also performed well in his PHI 216 class, and declined the assistance of a tutor which was offered him. *Id.*, ¶ 25. Any allegation that Defendant has failed to accommodate Plaintiff's disability or

13

that he has been denied any opportunity to participate in or benefit from the College's programs is baseless and his claim will ultimately be subject to dismissal.[4]

### C.  Plaintiff's Retaliation Claim is Vague and Seeks Improper Relief

Plaintiff's requested injunction that Defendant "cease retaliating against Plaintiff" is an improper "obey the law" injunction.  Second Circuit precedent requires that "under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 22–23 (2d Cir. 2023).  "This rule against broad, vague injunctions is designed to prevent uncertainty and confusion…." *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997).  Here, Plaintiff's request that the Court order CUNY to "cease retaliating" is precisely the type of vague "obey the law injunction" that is not permitted.  Accordingly, Plaintiff's motion for a preliminary injunction seeking to prevent Defendant from retaliating should be rejected.  *Purgess v. Parauda*, 2021 WL 2269540, at *5 (S.D.N.Y. June 3, 2021) (denying request for an "obey the law" injunction).  Further, as already demonstrated, Plaintiff has received all of the requested reasonable accommodations, and there are no plausible allegations of retaliation related to his requests.

## II.    PLAINTIFF CANNOT ESTABLISH IRREPARABLE HARM WITH RESPECT TO THE RELIEF SOUGHT

Plaintiff alleges that he will suffer irreparable harm if the requested accommodations are not granted.  But as demonstrated in Section I, *supra*, Plaintiff is already receiving all of the requested services.  There is therefore no basis for the Court to intervene at this time, as there is

---

[4]      Several of Plaintiff's other claims fail for additional reasons as well.  For example, Plaintiff's breach of contract claim is barred by the 11th Amendment.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Plaintiff's breach of contract claim also fails as Plaintiff was not a party to the Voluntary Compliance Agreement, and therefore cannot bring a claim under its terms.  *See* EF No. 3, Ex. 1 (Voluntary Compliance Agreement).  Plaintiff is also not entitled to emotional distress damages under the ADA or the Rehab Act, despite seeking them here.  Compl., p. 20; *Cummings v. Premier Rehab Keller P.L.L.C.*, 596 U.S. 212 (2022) (Rehab Act); *Montgomery v. District of Columbia*, No. 181928, 2022 WL 1618741, at *23-24 (D.D.C. May 23, 2022) (ADA).

no ongoing irreparable harm for the Court to address by granting the request for preliminary relief. *See State of N. Y. v. Nuclear Regul. Comm'n*, 550 F.2d 745, 755-56 (2d Cir. 1977) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights") (quoting *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)).

### III.    THE BALANCE OF EQUITIES TIPS IN FAVOR OF DEFENDANT

The Court must also "ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger,* 607 F.3d at 80 (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)); *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d at 609; *Saget v. Trump*, 375 F. Supp. 3d 280, 339-40 (E.D.N.Y. 2019) ("[B]ecause the Government is a party, and 'the Government's interest is the public interest,' the balance of hardships and public interest merge as one factor.").

As argued above, since Plaintiff is already receiving the requested services, Plaintiff cannot demonstrate either that the balance of equities tips in his favor, or that the preliminary injunction he seeks is in the public interest.  Plaintiff offers no justification as to why his interest – as opposed to the public's – must be vindicated by a preliminary injunction. *Marblegate Asset Mgmt.*, 75 F. Supp. 3d at 610 ("Plaintiffs offer no reason why the public's interest—as opposed to their own—is best served by an injunction rather than post hoc liability.")  It is plainly in the public interest to deny a motion where the government agency has been so committed to providing support for Plaintiff's disability, and there are no plausible allegations that there is an ongoing denial of any reasonable accommodations.

## IV.    PLAINTIFF SEEKS THE ULTIMATE RELIEF IN REQUESTING A REPORTING MECHANISM

It is well established that the purpose of a preliminary injunction "is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo." *Sarna*, 690 F. Supp. 2d at 175.  In his motion, Plaintiff seeks certain accommodations as well as a "regular reporting mechanism to the Court on the implementation of accommodations to ensure ongoing compliance." ECF No. 3, p. 2.  This relief is precisely the ultimate relief sought by Plaintiff in this action.  Further, Plaintiff's request for a reporting mechanism would improperly have this Court engage in ongoing judicial intervention and monitoring prior to any adjudication of liability.  There is no basis for the Court to modify the status quo by intervening in this manner through a preliminary injunction, particularly where Defendant has demonstrated that it is complying with the ADA and the Rehab Act.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's application for a temporary restraining order or a preliminary injunction.

Dated: New York, New York
        November 30, 2023

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*

BY: **/s/ Christopher Coulston**
CHRISTOPHER COULSTON
Assistant Attorney General
28 Liberty St.
New York, New York 10005
(212) 416-8556
email: christopher.coulston@ag.ny.gov

16

To:     ***by first class mail and email***
        Franklin Mendez
        550 West 174th Street
        Apt. 5
        New York, New York 10033
        Fmendez3327@gmail.com