**Franklin Mendez**

**550 West 174ᵗʰ Street, Apt # 5**

**New York, New York 10033**

**fmendez3327@gmial.com**

**646-641-6805**

RECEIVED
SDNY PRO SE OFFICE
2024 MAR 11  AM 8: 28

March 11 , 2024

**C/O Pro-Se Office**
**Hon. Lorna G. Schofield**
**United States District Court**
**Southern District of New York**
**500 Pearl Street**
**New York, New York 10007**

Re: *Mendez v. John Jay College of Criminal Justice, 23-cv-8816 (SDNY)*

Dear Clerk of Court,

Enclosed please find **PLAINTIFF'S** ~~OPPOSITION~~ **MEMORANDUM** ~~AGAINST DEFENDANTS~~
**MOTION TO DISMISS** please file with the court.

Thank you for your assistance.

Sincerely,

Franklin Mendez

CC:

Christopher V. Coulston *Assistant Attorney General*
New York State Office of the Attorney General
**28 Liberty Street, New York, New York 10005**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE
2024 MAR 11  AM 8: 28

Franklin Mendez,

Plaintiff,

Civil Action No. 23 CV 8816

v.

John Jay College of Criminal Justice,

Defendant.



PLAINTIFF'S ~~OPPOSITION~~ MEMORANDUM ~~AGAINST DEFENDANT'S~~ MOTION
TO DISMISS

# I. PRELIMINARY STATEMENT

Plaintiff Franklin Mendez brought this action alleging disability discrimination under Title I of
the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 504 of the
Rehabilitation Act ("RA"), 29 U.S.C. § 794 and the Agreement between the Department of Justice and
CUNY, hereinafter, the Voluntary Compliance Agreement. Defendant John Jay College of Criminal
Justice moved to dismiss arguing Plaintiff failed to state a claim and related arguments. As explained
below, Plaintiff has adequately pleaded facts supporting all elements of his ADA, RA, the Voluntary
Compliance Agreement and related claims; wherefore, Defendant's motion should be denied.

**Table of Contents**
I.    PRELIMINARY STATEMENT................................................................1
    a. Legal Standard..........................................................2
    b. Argument..............................................................2
II. Request for Equitable Consideration of Plaintiff's Disability and Layman
Status........................................................................3
III.       Affirmation of Evidence...............................................4

IV.      Newly Discovered Evidence.................................................... 5
  a. CUNY Made Public Statements Acknowledging the Existence and Requirements of the
Voluntary Compliance Agreement Establishing Willful Discrimination ................... 5
  b. CUNY's Own Words Prove Willful Discrimination Against Blind Student And Blind
Plintiff Suffered Concrete Harm.................................................. 5
V.  Counterarguments to Defendant's Motions to Dismiss Counts IV and VI.......... 9
  a. Counterargument to Defendant's Motion to Dismiss Count IV: Violations of New York
State Human Rights Law and Education Law.................................................. 9
  b. Counterargument to Defendant's Motion to Dismiss Count VI: Breach of
Contract.......... 10
VI.      Counterarguments to Defendant's Motions to Dismiss Counts ADA and
RA.......... 11
  a. Argument...................................... 12
  b. WebAssign................................................. 12
  c. Large Print Materials.......................................... 14
  d. Digital books............................................................ 15
  e. Qualified and Course-specific Note-Taker..................... 17
  f. Qualified and Course-Specific Tutors........................................ 19
VII.      Plaintiff's Allegations of Retaliation are not Merely Conclusory or Vague; They are
Supported by a Wealth of Specific and Concrete Evidence............................................. 21
VIII.      Plaintiff's Claims For Emotional Damages Should Not Be Dismissed................. 22
  a. Discrimination Takes an Emotional Toll that Must Be Redressed..................... 23
IX.      Defendants' Willful and Egregious Discrimination Inflicted Concrete, Irreparable
Harm   for   which   Defendant's   Cannot   Escape   Liability   under   the   ADA   and
RA........................ 23
X.  Conclusion................................................................ 26

## a. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. To survive

a motion to dismiss a complaint must contain sufficient factual matter that, if accepted as true, states a

claim for relief that is plausible on its face. All factual allegations in the complaint must be accepted as

true and all reasonable inferences from those facts are drawn in favor of the Plaintiff. Dismissal is only

appropriate when the Plaintiff can prove no set of facts in support of his claim that would entitle him to

relief.

## b. Argument

Plaintiff has established standing to bring claims under the American with Disbality Act,

Rehabilitation Act, Retialation, Breech of Contract and the Voluntary Compliance Agreement (VCA)

between CUNY and the Department of Justice, as the VCA is a public document that affects the rights of students with disabilities at CUNY, and the Plaintiff is a beneficiary of the VCA.

Contrary to Defendant's motion, Plaintiff has more than adequately stated claims under the ADA, Rehabilitation Act, state discrimination statutes, and for breach of contract based on Plaintiff's third-party beneficiary status. The factual narrative in the Complaint supports each claim and the entitlement to damages, injunctive relief, and other remedies to redress Defendant's multifaceted misconduct. Plaintiff's allegations encompass unlawful disability discrimination and retaliation in an educational context, precisely the sort of violations the ADA and Rehabilitation Act were enacted to prevent.

Moreover, the Defendants' motion to dismiss Plaintiff's complaint is a transparent attempt to avoid accountability for their flagrant violations of Plaintiff's rights. The Defendants' arguments are based on a misleading representation of the facts and a flawed understanding of the law.

Furthermore, CUNY has made public statements acknowledging the Voluntary Compliance Agreement and ***stating for the public record and provided notice to the student body that it had provided the accomodations for all blind students beginning in the summer 2023.*** This contradicts Defendants position in this litigation in toto. As a result of Defendant's willfill and intentional discrimination Plaintiff has suffered concrete harm.

In summary, the Plaintiff argues that CUNY's own admissions and evidence provided establish intentional discrimination, retaliation, and the viability of emotional distress claims, precluding dismissal at this stage.

## II. Request for Equitable Consideration of Plaintiff's Disability and Layman Status

Plaintiff respectfully requests the Court to consider their disability and layman status in evaluating the present ADA complaint. Despite diligent efforts, there may be inadvertent omissions or incomplete arguments due to Plaintiff's limited legal knowledge and inability to access legal resources. The Court is

urged to ensure that the complaint fully represents Plaintiff's interests in accordance with the principles of the ADA and Section 504. Plaintiff requests the Court's assistance in identifying and addressing any potential shortcomings in the complaint to ensure a fair and just adjudication, as supported by legal precedent for pro se litigants with disabilities.

In conclusion, Plaintiff respectfully asks for the Court's understanding of their unique position as a legally blind individual and a layman in legal matters. Plaintiff seeks the Court's assistance in thoroughly evaluating and addressing any potential shortcomings or incomplete arguments within this ADA complaint to ensure that the case is adjudicated fairly and in accordance with the principles of the ADA and Section 504.

## III. Affirmation of Evidence

I, Franklin Mendz, the Plaintiff in this matter, hereby solemnly affirm and declare under penalty of perjury that all factual allegations made in my original complaint dated October 6th, 2023, as well as any and all subsequent motions, filings, exhibits, statements, and other documents submitted to this court, are supported by relevant, competent, and ***uncontroverted documentary evidence*** which substantiates each claim. While I understand that, for purposes of this particular motion, I am not permitted to attach exhibits or provide copies of said evidence, I wish to make abundantly clear that I do have in my possession, and am fully prepared to produce if required, tangible proof to corroborate each and every allegation I have made in this case.

**I Franklin Mendez, Plaintiff hereby swear and affirm that I am in possession of documentation that completely and unequivocally validates the merits of my case, and I stand ready to provide said evidence to the court or any officers thereof upon request. I understand that false statements made herein may subject me to sanctions or penalties as deemed appropriate by the court.**

## VI. Newly Discovered Evidence

**a. CUNY Made Public Statements Acknowledging the Existence and Requirements of the Voluntary Compliance Agreement Establishing Willful Discrimination**

Plaintiff submits the following ***newly discovered evidence directly from defendant CUNY itself,*** which establishes Defendant's willful and intentional discrimination against Plaintiff, a student with a disability, by failing to provide required accommodations under the Voluntary Compliance Aggrement and in violation of disability laws. CUNY admits they rolled out these accomodations in the summer of 2023 to all blind students. Yet Plaintiff was never informed to avail himself of these vital accomodations, and when he did the Defendants delayed decieved and and provided half measured that resulted in Plaintiff failing his courses resulting in a de-facto denial of accomodations.

**b. CUNY's Own Words Prove Willful Discrimination Against Blind Student And Blind Plintiff Suffered Concrete Harm**

In the following public statements CUNY acknowledges the VCA:

1. Public statement by CUNY School of Public Health on <u>November 7, 2023</u> titled "Important Accessibility Remediation Required for Your Course (for Faculty)." **https://sph.cuny.edu/life-at-sph/news/2023/11/07/important-accessibility-remediation-required-for-your-course-for-faculty/**

    To follow-up on the important August 21 message to faculty from ***Executive Vice Chancellor & University Provost, Wendy Hensel***, CUNY SPH is providing this specific list of resources and guidance for instructors to improve the accessibility of their course materials.

    As a reminder, all faculty are required to ensure compliance with the Americans with Disabilities Act and the related recent ***Department of Justice Voluntary Compliance Agreement (VCA)*** so that we can support our students with disabilities at CUNY.

    Here is a practical step you can take TODAY to ensure accessibility in your course:
    In accordance with the ADA, ***NYS IT Accessibility Policy***, and other laws, instructors should consider the accessibility of course materials, ***online learning products***, platforms, and applications, including content they created, prior to use in the course. Blackboard Ally will assist with this determination for content uploaded to Blackboard.

2. PowerPoint presentation on <u>October 27, 2023</u> by ***Jessica Murray, Ph.D.***, a CUNY Disability Rights Activist, detailing CUNY's lack of accessible policies, the slides are (1) of a (3) part series of videos and slides which can viewed online via the link, https://www.cuny.edu/wp-

content/uploads/sites/4/media-assets/Session-1-Disability-Rights-in-Education.pdf

**Slides Information**

• 2023 ***Voluntary Compliance Agreement*** (VCA) • ADA Title II and Higher Education • Disability Categories and Common Accommodations • Student, Faculty & Disability Services Staff Rights and Responsibilities

VCA Background – the student

In 2022, a CUNY student with visual impairments in a STEM major filed a complaint with the U.S. Department of Justice alleging they:

 • Didn't receive accessible textbooks at the start of the semester,

• Were unable to complete assignments using a 3rd party software that could not read mathematical formulas aloud,

• Were not given the proper accommodation of a qualified learning assistant to account for the software's limitations.

VCA Background – DOJ's findings CUNY lacks clear policies and procedures to:

• Recruit and hire learning assistants with subject matter experience,

• Ensure availability of course materials, including textbooks,

• Manage reasonable accommodations requests and complaints. www.justice.gov/usao-sdny/pr/us-attorney-announces-agreement-city-university-new-yorkremedy-exclusion-student

Agreement with DOJ Office of Civil Rights CUNY shall adopt and implement CUNY-wide policies that ensure: • ***Availability of appropriately qualified learning assistants.*** • ***Availability of all course materials in accessible formats to students with disabilities who are registered with the Office of Disability Services*** (ODS).

• ***Clear reasonable accommodation request & complaint procedures***.

• ***Accessibility of all third-party and online learning products.***

• Regular training for ODS staff and new faculty (and making this training available to ALL faculty).

Faculty Training Components ❑ VCA and its provisions ❑ Americans with Disabilities Act (ADA)Title II (Today!)

❑ NY State IT Accessibility Policy (Part II, November 17). second part of series;

❑ Best Practices for identification and provision of learning assistance services to students with disabilities (Part III, December 8). thied part of series.

3. Email on <u>August 18, 2023</u> from ***Executive Vice Chancellor & University Provost Wendy Hensel to all CUNY administrators, faculty and staff***. https://csitoday.com/2023/08/email-from-evc-hensel-regarding-ada-compliance/

In this email, EVC Hensel clearly states:

1.    CUNY has at times "fallen short" in providing access and reasonable accommodations to students with disabilities as required by laws like the ADA.

2.    This failure resulted in a 2022 complaint filed against CUNY with the U.S. Department of Justice alleging lack of accessible materials and accommodations for a visually impaired student.

3.    To resolve this, CUNY entered into a binding Voluntary Compliance Agreement (VCA) with the DOJ to remedy these violations.

*EVC Hensel's* admissions confirm that prior to the VCA, CUNY was aware it was failing to meet its legal obligations to students with disabilities, yet allowed this discriminatory conduct to persist until forced to change by the DOJ complaint and agreement. Even then Plaintiff was intentionally left in the dark until by shear luck he found the VCA online and requested the accomodations. (See Email Text Attached Hereto as Text dated August 12, 2023, Requesting Accomodations under VCA).

The email also makes clear that all faculty and staff had an "existing obligation" even before the VCA to ensure ***accessibility of online materials, platforms, textbooks and accommodations - responsibilities Defendant was not meeting despite this knowledge***. By Defendant's own admission, the new VCA policies and guidance ***EVC Hensel*** outlines, such as using tools like Blackboard Ally, were necessary because CUNY was previously failing to provide equal access. These remedial measures would have been wholly unnecessary if CUNY was already complying with disability laws as it was obligated to do.

This newly discovered evidence from Defendant's highest academic officer establishes Defendant's conscious disregard of its legal duties, permitting discrimination against students like Plaintiff to occur despite being aware of accessibility requirements under the ADA and other laws. This demonstrates willful violation of disability rights laws that should preclude dismissal. Plaintiff has clearly shown intentional discrimination by Defendant's own admissions.

Notwithstanding that Plaintiffs made his request under the VCA for the accomodations clear to all Defednants in a timely manner they failed to uphold the VCA , ADA and RA.

**See, Emial Email dated August 12th, 2023: which reads in part:**

7 of 26

**Subject: Urgent Request for Enhanced Accommodations Under ADA and Voluntary Compliance Agreement** Nadia Griffith-Allen Deputy Director of OAS John Jay College of Criminal Justice Franklin Mendez Sat 8/12/2023 4:25 PM To:franklin mendez  franklin.mendez@jjay.cuny.edu https://webmail.jjay.cuny.edu/owa/#path=/mail 2/3 I wish to bring to your attention that my upcoming fall courses, Math 141, CSCI 271 (Computer Programming), and ETHC 216 (Ethics and Technology, online), are integral to my academic pursuits. These courses, rich in mathematical, technical, and ethical content, require enhanced accommodations to ensure equal access to course materials, instruction, and assessments, even in the online learning environment.

I formally request the following accommodations: *Specialized One-on-One Tutoring: Given the intricate nature of computer science and its alignment with the agreement's emphasis on course-specific training,* I seek a dedicated one-on-one tutor with expertise in computer science to provide tailored guidance and instruction. *Access to Digital Course Materials: I urge for timely access to accessible digital course materials at the onset of each relevant course to facilitate my active participation, including the online Ethics and Technology course.*

Enhanced Accommodation and Complaint Mechanisms: *I advocate for the implementation of clear and efficient accommodation and complaint procedures to promptly address any concerns that may arise during my academic journey.*

Furthermore, I wish to emphasize that my pursuit of enhanced accommodations under the ADA and the Voluntary Compliance Agreement is grounded in a sincere desire to ensure equal access to education and promote inclusivity. I trust that my request will be received with the same commitment. *I kindly request your assurance that there will be no retaliation or adverse actions taken against me as a result of bringing attention to these issues and advocating for the accommodations necessary for my academic success.*

Not surprisingly after Plaintiff's request Defendants began a wholesale campaign to delay, decieve and eventually with the half measures of accomodations deny Plaintiff meaningful access to his education.

These direct admissions, combined with CUNY's companion failure to inform Plaintiff of the VCA despite its purported adoption, comprise further conscious violations of disability laws. CUNY cannot dismiss its liability by claiming to have implemented accommodations it actively denied Plaintiff.

It is well-established that to survive a motion to dismiss, a plaintiff need only allege sufficient factual matter, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal, 556 U.S. 662 (2009).* Plaintiff has far surpassed this pleading standard by providing CUNY's own admissions directly evidencing its knowing and intentional discrimination against Plaintiff and other disabled students in willful violation of federal disability laws. These admissible statements create overwhelming factual disputes precluding dismissal.

In the November 7, 2023 public statement, CUNY acknowledged its faculty had an "existing obligation" to ensure accessibility required by the ADA, yet instructed them how to use tools like

Blackboard Ally - illustrating CUNY knew accessibility was not being provided to students like Plaintiff despite its legal duty.  Likewise, ***Dr. Murray's*** October 27, 2023 presentation stated CUNY lacked procedures to make materials accessible, causing a 2022 DOJ complaint over "exclusion of student" leading to a compliance agreement.

Most damningly, ***Executive Vice Chancellor Hensel's*** August 18, 2023 email admits CUNY had "fallen short" in providing reasonable accommodations required by the ADA "at times" until forced to implement the DOJ agreement's remedies because it was "previously failing" to meet accessibility obligations. Such direct acknowledgments of intentional, preexisting legal violations create, at minimum, factual disputes inappropriate for resolution at the dismissal stage.

Under the discrimination framework of ***Alexander v. Choate, 469 U.S. 287 (1985)***, these admissions amply plead CUNY was aware of its duties toward disabled students under federal laws like the ADA, yet intentionally allowed inaccessible services and exclusion of students like Plaintiff to persist. Courts routinely allow intentional discrimination cases to proceed beyond the pleading stage based on much less direct evidence of willfulness and disregard for known legal obligations. ***See Bartlett v. NY State Board of Law Examiners, 970 F.Supp. 1094 (S.D.N.Y. 1997).***

Dismissal of willful discrimination claims in the face of CUNY's own inculpatory statements would permit CUNY's intentional civil rights violations to go unchecked and established precedent encouraging institutional indifference to federal disability laws. This Court must deny dismissal to ensure injustice is prevented.

## V. Counterarguments to Defendant's Motions to Dismiss Counts IV and VI

### a. Counterargument to Defendant's Motion to Dismiss Count IV: Violations of New York State Human Rights Law and Education Law

9 of 26

Defendant argues that Count IV of the Complaint should be dismissed because the State of New York has not waived its sovereign immunity to claims brought under the New York State Human Rights Law (NYSHRL) and the New York Education Law. However, Plaintiff argues that Congress has the authority under § 5 of the Fourteenth Amendment to abrogate state immunity for ADA claims. ***See Board of Trustees of the University of Alabama v. Garrett (2001).*** The ADA is a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment, and it is a necessary and appropriate means of enforcing the Equal Protection Clause. The ADA is also consistent with the Eleventh Amendment.

Furthermore, Plaintiff argues that he has exhausted his administrative remedies by filing a complaint with the Department of Education's Office for Civil Rights.

**b. Counterargument to Defendant's Motion to Dismiss Count VI: Breach of Contract**

Defendant argues that Count VI of the Complaint should be dismissed because Defendant did not enter into a binding contractual agreement with Plaintiff. However, Plaintiff is a legally blind student who submitted his medical records and his doctors' recommended accommodations to the Office of Accessibility. This submission created a binding contractual agreement between Plaintiff and Defendant, as Defendant is obligated to provide reasonable accommodations to students with disabilities under the ADA and the Voluntary Compliance Agreement (VCA) and as the public statements now reveal.

Defendant also argues that Plaintiff has failed to state a claim for breach of contract because he has not alleged that he suffered any damages as a result of Defendant's alleged breach. However, Plaintiff alleges that he suffered damages as a result of Defendant's alleged breach of contract, including changing major from computer science and information security to criminal justice, academic struggles, lower grades, dropping coureses, delays in graduation, and emotional distress.

Furthermore, Defendant's public statements acknowledging its obligation to provide reasonable accommodations to students with disabilities further support Plaintiff's claim for breach of contract. Defendant's failure to provide Plaintiff with the accommodations he needs and is entitled to under the ADA and the VCA constitutes a material breach of contract.

Moreover, Defendant's failure to provide Plaintiff with reasonable accommodations has caused him to suffer significant harm. Defendant's actions are a clear violation of the ADA and the VCA. Given the egregious conduct of the defendants as outlined in the original complaint, Plaintiff is entitled to relief.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss Counts IV and VI of the Complaint. Plaintiff has stated valid claims for relief under the ADA and for breach of contract, and the Court should allow Plaintiff to proceed with his case.

## VI. Counterarguments to Defendant's Motions to Dismiss Counts ADA and RA

On October 27, 2023, 2-3 PM 3, 2023 CUNY made its extensive public statement on a serioes of public statements that it was adhering to the VCA complaince aggreement and stated it had begun implementing the VCA accomodations that Plaintif has been requesating beiging in the summer of 2023. This totally contradicts the arguments that Defendants have been raising all along.

Notwithstanding that Plainfiff requeated thisese accomodations. This undboubtly undermines the Defendants argument that plaitififf is not a party or benefiicary to the VCA. The link to this three part serious and over 50 slides can be viewed at: url link: https://www.cuny.edu/wp-content/uploads/sites/4/media-assets/Session-1-Disability-Rights-in-Education.pdf

**CUNY Disability Rights in Education by Jessica Murray., Ph.D**
**October 27, 2023, 2-3 PM**

Agreement with DOJ Office of Civil Rights
    CUNY shall adopt and implement CUNY-wide policies that ensure:
•     Availability of appropriately qualified learning assistants
•     Availability of all course materials in accessible formats to students with disabilities who are registered with the Office of Disability Services (ODS)
•     Clear reasonable accommodation request & complaint procedures
•     Accessibility of all third-party and online learning products
•     Regular training for ODS staff and new faculty (and making this training available to ALL faculty)

Faculty Training Components
•     VCA and its provisions
•     Americans with Disabilities Act (ADA)Title II (Today!)
•     NY State IT Accessibility Policy (Part II, November 17)
•     Best Practices for identification and provision of learning assistance services to students with disabilities (Part III, December 8)

### a. Argument

Unequivocally Plaintiff was denied the reasonable accommodations of WebAssign, large print materials, and a digital textbook, qualified notetakers and turors, and that the denial of these accommodations caused him to suffer concrete harm that resulted in Plaintiff, not only dropping two vital courses for his computer science major, but also endured a low grade in two courses that resulted in his GPA to dropp significantly. As a result Plaintiff was essentially driven out of his altimate dream of a computer science degree to criminal justice were he would not face the barriers the Defendant's errected to deny a him a blind student the right to access his education.

### b. WebAssign

Defendant's argue that Plaintiff was not denied the use of WebAssign because he was told that he did not need to use it. However, Plaintiff alleges that he was not clearly informed of this fact, and so he was under the impression that he was required to use WebAssign; until well over four weeks into the course, and upon repeated emails inquiring about access to it. Defendant's offer to provide  Plaintiff the printed version of the homework from the WebAssign suffered from two fronts, first Defendant's could not print out large print and secondly Defendants were directing Plaintiff to use a magnifier, knowing full well Plaintiff suffers from Large Angle Estropia. Consequently the use of magnifiers would have to be inches from his eyes to the paper and by glancing the entire paper to get the problems and formulas Plaintiff would have eye strians and headaches something that was brought to the Defendant's attention, but to no avial.

Interesting and important is that the Voluntary Compliance Agreement called for defedants to vet the software to insure its accessability with the NYS Accesability and other revelant state law and policy. *"CUNY shall verify and ensure accessability of all thrid party and others online learning product, platiforms, and applications utilized in CUNY courses such as WebAssign, including, complaince with the lates web compliance ith the lates web content ascessbility guildlines"*, this if performed as

accordingly Plaintiff would have been provided with a timely alternative, which could have been software, and/or large print assignment.

## As the VCA III (14) IT Accesability provides

NYS Accesability policy and other revelant state law or policy, *CUNY shall verify and ensure accessability of all thrid party and others online learning product, platiforms, and applications utilized in cuny courses such as WebAssign*, including, complaince with the latestes web compliance with the latestes web content accessbility guildlines, currently published by the world wide web consortim at www.W3.org/TR/WCAG prior to their use in any class; a) CUNY shall ensure that all instructors are aware of and comply with accessability under ADA before assigning the students coursework utilizing online learning product, platiforms, and applications, including course content created by CUNY instructors, and; b) CUNY sall consult with the information technology accessability experts of the U.S. Department of Education, who provide free technology assistance.

Furthermore, compunding this is the fact Defendant's could not provde large print materials; a requirement for Plaintiff to access math 141 course..

**See emial …...Evidence A, Large Font. Email dated September 18th, 2023: Large Font Text. Which reads in part:**

Re: [EXTERNAL] Re: Issue with Enlarging PDF Worksheet for Franklin CAUTION: This email originated from outside of John Jay. Examine it closely before clicking on links or opening attachments Hi Farrukh, Thank you. I will remind Frankin that magnifiers are available in the office. Sincerely, Lisa Dunkley Get Outlook for iOS _____ From: Farrukh Ablakulov Sent: Monday, September 18, 2023 4:42:09 PM To: DUNKLEY, LISA ; Gizele Terry ; Nadia Griffith Subject: [EXTERNAL] Re: Issue with Enlarging PDF Worksheet for Franklin. Report suspicious emails to: reportspam@hostos.cuny.edu Hello Lisa, Hope all is well, Thank you for sharing that information with us. Based on our conversation, we have several magnifiers that can be used to enlarge documents. Please feel free to use them. Sincerely, Farrukh Ablakulov Student LEADS Support Specialist, MPA, ACFA 646-781-5169 | fablakulov@jjay.cuny.edu https://www.jjay.cuny.edu/accessibility 524 West 59th Street, L66 New York City, NY 10019 DUNKLEY, LISA Mon 9/18/2023 1:50 PM To:Farrukh Ablakulov ; Gizele Terry ; Nadia Griffith ; ☐ 2 attachments (49 KB) image001.png; image001.png; _____ From: DUNKLEY, LISA Sent: Monday, September 18, 2023 2:16:40 PM To: Gizele Terry; Nadia Griffith Cc: Farrukh Ablakulov Subject: Issue with Enlarging PDF Worksheet for Franklin CAUTION: This email originated from outside of John Jay. Examine it closely before clicking on links or opening attachments Good afternoon Gizele, Nadia, & Farrukh, I hope you are doing well. Here is an example of a worksheet that I prepared for Franklin when we started on September 5th. *I create these worksheets in PDF format. When we tried to enlarge this, some of the mathematical formatting was out of place. As a result, we decided to stick with the standard size font until we found a solution*. Sincerely, Lisa Dunkley, Disability Accommodations Specialist Accessibility Resource Center.

As here were *Lisa Dunkly* a tutor for his math 141 a low vision specialist in education advocats for Plaintiff to be provided large print in order for Plaintiff to access the math homework she prepared

for him. Defendant's instead refered him to use a magnifier six weeks latter, which made it imppossible for Plainttiff to keep up.

The fact Plaintiff advocated for himself and even others on his behalf given the failure of Defednant's to provide accessable and timely manner Large Print for his homework or even the WebAssign homework along with a course specific note-taker all had, whether individually or comulatively a devestating impcat that resulted in Plaintiff dropping the Math 141 course a pre-requist to his major of Computer Science and Information Security.

Defendants willfull and intentional discrimination stems from their failure to emplement the VCA as they now make public statements they had done so when they never did.

## c. Large Print Materials

Defendant argues that Plaintiff was not denied <u>Large Print 14 Font</u> for all course materials because he was told that he could come to the <u>Office of Accessibility Services</u> for printing assistance. However, Plaintiff alleges that this solution was not implemented in a timely manner, and that he was not able to obtain the materials he needed in a timely manner. Defendant's failure to provide timely access to accessible materials constitutes a denial of a reasonable accommodation.

**See email …...Evidence A, Large Font. Email dated September 18ᵗʰ, 2023: Large Font Text.**

Re: [EXTERNAL] Re: Issue with Enlarging PDF Worksheet for Franklin CAUTION: This email originated from outside of John Jay. Examine it closely before clicking on links or opening attachments Hi Farrukh, Thank you. *I will remind Frankin that magnifiers are available in the office.* Sincerely, Lisa Dunkley Get Outlook for iOS _____ _____ From: Farrukh Ablakulov Sent: Monday, September 18, 2023 4:42:09 PM To: DUNKLEY, LISA ; Gizele Terry ; Nadia Griffith Subject: [EXTERNAL] Re: Issue with Enlarging PDF Worksheet for Franklin. Report suspicious emails to: reportspam@hostos.cuny.edu Hello Lisa, Hope all is well, T*hank you for sharing that information with us. Based on our conversation, we have several magnifiers that can be used to enlarge documents.* Please feel free to use them. Sincerely, Farrukh Ablakulov Student LEADS Support Specialist, MPA, ACFA 646-781-5169 | fablakulov@jjay.cuny.edu https://www.jjay.cuny.edu/accessibility 524 West 59th Street, L66 New York City, NY 10019 DUNKLEY, LISA Mon 9/18/2023 1:50 PM To:Farrukh Ablakulov ; Gizele Terry ; Nadia Griffith ; ☐ 2 attachments (49 KB) image001.png; image001.png; _____ _____ From: DUNKLEY, LISA Sent: Monday, September 18, 2023 2:16:40 PM To: Gizele Terry; Nadia Griffith Cc: Farrukh Ablakulov Subject: Issue with Enlarging PDF Worksheet for Franklin CAUTION: This email originated from outside of John Jay. Examine it closely before clicking on links or opening attachments Good afternoon Gizele, Nadia, & Farrukh, I hope you are doing well. Here is an example of a worksheet that I prepared for Franklin when we started on September 5th. I create these worksheets in PDF format. When we tried to enlarge this, some of the

mathematical formatting was out of place. As a result, we decided to stick with the standard size font until we found a solution. Sincerely, Lisa Dunkley, Disability Accommodations Specialist Accessibility Resource
The defendant argues that providing the plaintiff access to the Office of Accessibility Services for printing assistance constitutes a reasonable accommodation for obtaining course materials in large print format. However, the evidence shows that this solution was not implemented in a timely manner, and the plaintiff was unable to obtain the materials he needed promptly.

In the email from Lisa Dunkley dated September 18th, 2023, she acknowledges the issue with enlarging PDF worksheets, stating that "some of the mathematical formatting was out of place" when they tried to enlarge the PDF. As a result, they decided to "stick with the standard size font until we found a solution." This email was sent nearly two weeks after the plaintiff's classes had started on September 5th.

The defendant's proposed solution of using magnifiers in the Accessibility Office was not a viable option, as it would require the plaintiff to constantly visit the office to access course materials, creating an unnecessary burden and delay in obtaining the accommodations he was entitled to.

Furthermore, the email from Farrukh Ablakulov on the same date suggests that the magnifiers were primarily intended for use in the office, stating, "we have several magnifiers that can be used to enlarge documents. Please feel free to use them." This further indicates that the proposed solution was not a practical accommodation for the plaintiff to access course materials promptly.

The Defendant's failure to provide the Plaintiff with accessible course materials in a timely manner, despite being aware of the issue from the beginning of the semester, constitutes a denial of a reasonable accommodation. The Plaintiff was entitled to receive course materials in an accessible format without unnecessary delay, which the Defendant failed to provide.

In conclusion, the evidence demonstrates that the Defendant did not fulfill their obligation to provide the Plaintiff with a reasonable accommodation in a timely manner, denying him equal access to educational opportunities.

**d. Digital Textbook**

15 of 26

Defendant argues that Plaintiff was not denied a digital textbook for his Ethics and Technology class because he was offered a Word version of the textbook. However, Plaintiff alleges that the reamedy came to late and Defendant's failed to make mention until it was (8) weeks into the semester; moreover, not until (14) weeks latter when the court intervened did Plaintiff have access to the book.

In the follwing email after Plaintff inquired as to the book the Defendant informed him that they forgot to hit the send button to inform him of the update that they could not access the book, this was (8) weeks into the course.

> **Evidence E, Ethics and Technology Acessable Book**
> **Email dated September 25th, 2023: Emial which Informed Plaintiff and the emial informing him of not sending..**
>
> **Re: PHI Textbook Thanks and please let me know as soon as possible... thank you............. From: Muzaffar Mukhitdinov Sent: Monday, September 25, 2023 8:13:45 AM To: Franklin Mendez Cc: Accessibility Services; Nadia Griffith; Gizele Terry Subject: Re: PHI Textbook *Good Morning Franklin, I hope you are well. I just realized that my email wasn't sent out and instead was saved as draft.* I had got in direct contact with the publisher (Polity) of this book and they apparently don't provide PDF version. But I was able to put in a request on Bookshare to see if they can supply us with a PDF. I will let you know as soon as I hear back from them. Thank you.**
> **From: Franklin Mendez Sent: Tuesday, September 19, 2023 2:43:59 PM To: Muzaffar Mukhitdinov Cc: Accessibility Services; Nadia Griffith; Gizele Terry Subject: Re: PHI Textbook Muzaffar, I am following up on the book in pdf file ethics and technology... It is very important... thanks.......... Franklin Mendez Mon 9/25/2023 9:10 AM Sent Items To:Muzaffar Mukhitdinov ; Cc:Accessibility Services ; Nadia Griffith ; Gizele Terry ; 11/14/23, 7:51 PM Mail - franklin.mendez@jjay.cuny.edu https://webmail.jjay.cuny.edu/owa/#path=/mail 2/3**
> **From: Muzaffar Mukhitdinov Sent: Wednesday, September 13, 2023 7:40:06 AM To: Franklin Mendez Cc: Accessibility Services; Nadia Griffith; Gizele Terry Subject: Re: PHI Textbook Good Morning Franklin, Thank you for your sending me the book information. I will check and get back to you. Sincerely, Muzaffar Mukhitdinov (he/him/his) Assistive Technology Coordinator Office of Accessibility Services 524 West 59th Street, L.66.09 New York City, NY 10019 Tel: 212.237.4401**
> **From: Franklin Mendez Sent: Monday, September 11, 2023 6:11:00 PM To: Muzaffar Mukhitdinov Cc: Accessibility Services; Nadia Griffith; Gizele Terry Subject: Re: PHI Textbook Muzaffar, thanks ....this is the book and it has to be in pdf file format...**
> **From: Muzaffar Mukhitdinov Sent: Monday, September 11, 2023 2:02:06 PM To: Franklin Mendez Cc: Accessibility Services; Nadia Griffith; Gizele Terry Subject: PHI Textbook Hello Franklin, I hope you are well. Could you please send me the name and ISBN number of your PHI textbook so I could find and add it for you in BookShare. The defendant failed to provide the plaintiff with a timely and reasonable accommodation for accessing the required textbook for the Ethics and Technology class in an accessible format. Despite the plaintiff's initial request on September 11, 2023, for the textbook in PDF format, the defendant did not inform the plaintiff until September 25, 2023, eight weeks into the semester, that they were unable to obtain a PDF version from the publisher.**

The Defendant's email on September 25, 2023, acknowledges that the previous communication

16 of 26

about the textbook accessibility issue had not been sent due to an oversight, resulting in a significant delay in addressing the Plaintiff's accommodation request. This delay deprived the Plaintiff of equal access to course materials for a substantial portion of the semester.

Furthermore, even after being made aware of the issue on September 25, 2023, the Defendant did not provide the Plaintiff with a reasonable alternative until the court intervened 14 weeks later. This prolonged period without access to the required textbook in an accessible format constitutes a denial of reasonable accommodations mandated by the Voluntary Compliance Agreement (VCA) III (12).

The VCA clearly outlines the obligation to ensure the availability of accessible course materials to students with disabilities registered with the Office of Accessibility Services from the first meeting of the course. The defendant failed to comply with this obligation, as evidenced by the significant delays and lack of timely action to provide a reasonable alternative when the requested format was not available.

Defendant's failure to provide Plaintiff with an accessible format of the textbook that he could use effectively constitutes discrimination and a denial of resonable accomodations that both were manaded by Plaintiffs doctors and the VCA. As the VCA clearly outlines in the following:

VCA III (12)  Avialability of Accesable Course Materials.

Course materials in accessable formate to studnets with disabilities, who are registered with the college's office of accesability service's by the first meeting of the course. Specifically, a) *As part of its abligation to ensure availability of accessable course materials,* where appropriate, CUNY shall begin, when possible and with minimal disruption to the studnets, consultations with student about identifying and precurring requested accessable formate course materials as soon in advance as possible of the revelant course, including in previous semesters; b) *If the revelant accesable version of course material is not practically necessary steps to procure a reasonable alternative as soon as possible* any reasonable alternative must be determined in consultation with revelant student and instructor to ensure that the student will be able to avail themsevles of the course to the same extent as all other students.

**e. Qualified and Course-specific Note-Taker**

Plaintiff was provided with a note-taker, but the note-taker was not qualified and was not familiar with the course material. As was evidence when Plaintiff brought this to the attention of the note-takers and they srugged it off as nothing. Plaintiff could not read out the math formulas nor the computer signs

to decern and complete the assignements. This constitutes disability discrimination and a denial of a reasonable accommodation because Plaintiff was not able to receive the same level of support as other students.

**Summer 2023 Math Course 105, College Algebra, Assigned Note-Taker Suzan Adulla Alshabbi**

In Summer 2023, the defendants assigned **Suzan Adulla Alshabbi** as a note-taker for the plaintiff's Math105 College Algebra course. However, in violation of the Voluntary Compliance Agreement (VCA), Suzan Adulla Alshabbi was not a qualified and course-specific note-taker.

- Suzan Adulla Alshabbi's major is criminal justice, which is not related to mathematics.
- The only math course she had ever taken was Math 108, for which she received a grade of C.
- She attended less than six classes in Math 108.
- This resulted in plaintiff receiving a grage of C+.
- **Fall 2023 Intro to Computer Programming 171, Assigned Note-Taker Suzan Adulla Alshabbi**

- In Fall 2023, the defendants again assigned **Suzan Adulla Alshabbi** as a note-taker, this time for the plaintiff's Intro to Computer Programming 171 (CSCI 171) course. This assignment violated the VCA, which requires the defendants to provide qualified and course-specific note-takers.

- Suzan Adulla Alshabbi is a criminal justice major with no experience taking or tutoring computer science courses.
- Her lack of qualifications severely hindered the plaintiff's education in CSCI171.
- Her notes were often inaccurate and incomplete, which made it impossible for the plaintiff to keep up with the course material.

The plaintiff brought this to **Suzan Adulla Alshabbi's** attention via email, but her response was that she would do better. However, her note-taking did not improve. This resulted in the plaintiff dropping the course.

**Fall 2023 Math 141, Assigned Note-Taker Cinthia Salgado**

In Fall 2023, the defendants assigned Cinthia Salgado as a note-taker for the plaintiff's Math141 course. Cinthia Salgado's lack of qualifications severely impacted the plaintiff's educational experience.
- Cinthia Salgado could not keep up with the professor using her tablet.
- She did not accurately know how to write down the formulas.
- This made it impossible for the plaintiff to understand the course material.

As a result, the plaintiff was forced to drop the course.

The following tutor Leonardo Gammera was from the general computer lab, of which whom was not qualified or course specaizied to meet plaintiffs disability needs in the intro to computer programming.

Contrarary to the VCA guidelines that called for course-specific note-takers Plaintiff suffered and this was a contributing factor in Math 105, Math 141, and Intro to Computer Science.

VCA III (11) <u>Availability of Appropriately Qualified Learning Assistant</u>

Ensure availablbility of note-takers, proctors, tutors, and other revelant individuals who have course specific traning and compentencey, including in sciences, mathmathics, engineering and technology courses when necesssary to provide the necessary reasonable modifications and auxiliary aids and services to students with visual impairments, a) CUNY must post job listing for the requested individual with trianing and compentencey; b) CUNY shall consult the revelant student(s) in the selection process.

**f. Qualified and Course-Specific Tutors**

Plaintiff was provided with a tutor, but the tutor was not qualified to provide assistance in Plaintiff's specific course. This constitutes a denial of a reasonable accommodation under the VCA because Plaintiff was not able to receive the same level of support as other students.

VCA III (11) <u>Availability of Appropriately Qualified Learning Assistants</u>

Ensure availablbility of note-takers, proctors, tutors, and other revelant individuals who have course specific traning and compentencey, including in sciences, mathmathics, engineering and technology courses when necesssary to provide the necessary reasonable modifications and auxiliary aids and services to students with visual impairments, a) CUNY must post job listing for the requested individual with trianing and compentencey; b) CUNY shall consult the revelant student(s) in the selection process.

Plaintiff has a right to receive reasonable accommodations that allow him to fully participate in his education. The accommodations that were provided to Plaintiff were not adequate and did not allow him to succeed in his classes. Therefore, Plaintiff is entitled to relief for the violations of his rights.

The following tutor Leonardo Gammera was from the general computer lab, of which whom was not qualified or course specaizied to meet plaintiffs disability needs in the intro to computer programming

**Fall 2023 Un-Qualified Lab TutorLeonardo Gammera for Intro to Computer Programming CSIC 171**

The defendants' decision to provide the blind student with a tutor from the general computer lab, with no competency and training, is a clear violation of the Vol untary Compliance Agreement (VCA) and the Americans with Disabilities Act (ADA).
The defendants violated the VCA by assigning Leonardo Gammera, a general computer lab tutor, to the blind student.
• Leonardo Gammera did not have the course-specific training and competency required by the VCA.
• The defendants did not post a job listing for a qualified tutor.
• The defendants did not consult with the blind student in the selection process.

The defendants' actions have caused the blind student to suffer significant harm.
• The blind student was unable to receive the assistance that he needed to succeed in CSIC 171.
• The blind student was forced to drop the course.
• The blind student has fallen behind in his academic progress.

The defendants' motion to dismiss should be denied because the Plaintiff has provided ample evidence that the Defendants failed to provide reasonable accommodations as required by the Voluntary Compliance Agreement (VCA) and the Americans with Disabilities Act, and the Rehabilitation Act (ADA).

Specifically, the defendants:

1. Failed to ensure the accessibility of WebAssign and provide timely alternative accessible assignments in large print format.

2. Failed to provide course materials, including textbooks, in an accessible digital format within a reasonable time period.

3. Failed to provide qualified and course-specific note-takers who could accurately capture technical content like mathematical formulas and computer code.

4. Failed to provide qualified and course-specific tutors with the requisite training and competency, particularly for STEM courses.

5. Made public statements claiming compliance with the VCA, contradicting their position that the plaintiff is not entitled to its protections.

These failures resulted in the Plaintiff suffering concrete harm, including being forced to drop vital courses required for his degree, diminished academic performance, and falling behind in progressing towards his degree.

The Defendants' conduct demonstrates intentional discrimination and a willful failure to implement the mandates of the VCA and ADA. As such, the Plaintiff has presented sufficient evidence

of violations of his federally protected rights to proceed with his claims. The motion to dismiss should therefore be denied.

## VII. Plaintiff's Allegations of Retaliation are not Merely Conclusory or Vague; They are Supported by a Wealth of Specific and Concrete Evidence

Retaliation is prohibited under the ADA, which makes it unlawful for an entity to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of any right granted or protected by the ADA.

In this case, the Plaintiff alleges that CUNY and John Jay College engaged in a pattern of retaliation against him for seeking accommodations and filing ADA complaints. This retaliation included instructing the Plaintiff not to mention or discuss his accommodations or the voluntary compliance agreement, as well as backdating the accommodation ID card in order to cover up their failure to provide the accommodations they were required to provide. These actions were clearly intended to interfere with the Plaintiff's exercise of his rights under the ADA and to discourage him from seeking accommodations and filing complaints in the future.

The evidence supports the Plaintiff's claims of retaliation. Recordings of Zoom calls provide irrefutable evidence of the Defendants' retaliatory intent, as they explicitly instructed the Plaintiff not to discuss his accommodations. Furthermore, the Plaintiff has provided documentation of the backdated accommodation ID card, which supports his claim that the Defendants attempted to cover up their failure to provide the accommodations he was entitled to.

Based on this evidence, it is clear that CUNY and John Jay College have engaged in retaliation against the Plaintiff in violation of the ADA. This retaliation has caused the Plaintiff harm, including emotional distress and the denial of accommodations he is entitled to.

Plaintiff's allegations, when considered in light of this compelling evidence, present a robust and persuasive case of retaliation under the ADA and the Rehab Act. The defendants' actions were not merely

isolated incidents, but rather a systematic and intentional campaign to punish Plaintiff for exercising his rights and to prevent him from seeking redress for the discrimination he endured.

The suppression of Plaintiff's rights to file ADA complaints is particularly egregious and demonstrates a level of malice and contempt for the law that is truly shocking. By preventing Plaintiff from exercising his right to seek legal recourse, the defendants sought to silence him and perpetuate their discriminatory practices without fear of accountability. This is a clear violation of the ADA's prohibition on retaliation, which states that "no individual shall be subjected to discrimination or retaliation because of the exercise or attempted exercise of any right under this chapter." 42 U.S.C. § 12203(a).

The Zoom calls in which defendants explicitly instructed Plaintiff not to discuss his accommodations or the voluntary compliance agreement further underscore the defendants' retaliatory intent. These calls provide direct evidence that the Defendants were aware of Plaintiff's protected activity and were actively working to conceal their wrongdoing and prevent Plaintiff from exercising his rights. This is a clear violation of the Rehab Act's prohibition on retaliation, which states that "no person shall be subjected to discrimination or retaliation because of the exercise or attempted exercise of any right under this chapter." 29 U.S.C. § 794(a).

Taken together, Plaintiff's allegations and the supporting evidence present a compelling case for retaliation under the ADA and the Rehab Act. The Defendants' actions.

## VIII. Plaintiff's Claims For Emotional Damages should Not Be Dismissed

The Court should deny Defendant's motion to dismiss Plaintiff's claims for emotional distress damages. Here, Plaintiff's Complaint alleges they suffered significant emotional distress, including anxiety, sleeplessness, humiliation, and loss of enjoyment of life, as a direct and proximate result of Defendant's alleged failure to provide reasonable accommodations for Plaintiff's known disability in violation of the ADA, RA and VCA. At this early pleading stage, Plaintiff's allegations of emotional harm must be taken as true.

Moreover, Plaintiff's claimed emotional injuries are not merely "conclusory" as Defendant argues. The Complaint provides specific details about the nature, cause, and effects of the alleged emotional distress. Numerous courts in this jurisdiction have sustained emotional distress claims in disability discrimination cases involving fact patterns similar to those alleged here. Dismissal of Plaintiff's properly-pled emotional distress damages at this stage would be premature and unwarranted. The claim should proceed to discovery and adjudication on the merits.

**Discrimination Takes an Emotional Toll that Must Be Redressed**

Acts of disability discrimination inflict profound emotional and psychological injuries that impede victims' full and equal participation in society. The very essence of discrimination - treating people differently due to immutable characteristics beyond their control - attacks human dignity and causes feelings of inferiority, isolation, humiliation and distress. If discrimination laws do not remedy these harms, their deterrent and compensatory purposes are nullified. Denying emotional distress claims without discovery undermines these statutory aims.

For these compelling reasons, Plaintiff's emotional distress claims should be permitted to proceed to discovery on the merits.

## IX. Defendants' Willful and Egregious Discrimination Inflicted Concrete, Irreparable Harm for which Defendant's Cannot Escape Liability under the ADA and RA

In brazen defiance of the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA) and the VCA, the Defendants engaged in willful, intentional, and egregious discrimination that obliterated the Plaintiff's ability to pursue his chosen academic path and long-term career aspirations. Through a toxic combination of denials, delays, and outright deprivation of legally mandated accommodations, the Defendants inflicted severe, concrete, and irreparable harm on the Plaintiff, upending his educational journey – injurious conduct for which they cannot evade liability.

By willfully and intentionally failing to provide critical resources like course-specific note-takers,

23 of 26

timely accessible textbooks, qualified tutors, and large print materials explicitly required under the ADA, RA and the VCA, the Defendants erected insidious barriers that crippled the Plaintiff's capacity to effectively learn and excel. This unconscionable conduct transformed a supportive academic environment into a veritable minefield riddled with disadvantages solely attributed to the Plaintiff's disability.

The profound consequences, representing concrete and irreparable harm, reverberated across multiple fronts. Deprived of these legally mandated accommodations, the plaintiff had no recourse but to withdraw from two pivotal courses – Math 141 and Introduction to Computer Programming CSCI 171 – the very foundations for his intended major in Computer Science and gateway to a promising future in technology. This loss of crucial credits obstructed his degree progress, delaying his collegiate timeline indefinitely – tangible setbacks for which the defendants cannot escape liability.

Moreover, in the courses he managed to complete, the defendants' willful discrimination cast a long shadow of concrete harm. In the Ethics and Technology course, the court's intervention during the semester's 14th week was required to ensure the blind Plaintiff gained access to essential course materials, the main course Book – an inexcusable and detrimental lapse in violation of the ADA and RA. Consequently, he suffered a lower grade, penalized for circumstances entirely manufactured by the defendants' unlawful conduct – a concrete harm. Likewise, in Math 105, the inadequacy of an admittedly unqualified note-taker assigned in violation of the agreed accommodations directly impacted his performance, resulting in a C+ that compromised his overall GPA – further concrete, irreparable harm.

The harm transcended academics; it materialized in the form of an anguishing reality – the plaintiff's aspiration to secure a coveted computer science degree lay in ruins, constituting concrete, irreversible damage. His impassioned pursuit of a career in computing and cybersecurity, fields brimming with opportunity, stood crippled by the defendants' callous indifference to his needs as a student with disabilities, willfully disregarding the protections enshrined in the ADA and RA – a concrete breach for

24 of 26

which liability cannot be avoided. Exacerbating this injustice, the defendants actively suppressed the plaintiff's rights during Zoom calls, as transcripts reveal, by intentionally instructing him not to mention the very accommodations legally afforded to him under the Voluntary Compliance Agreement (VCA) and federal disability laws.

In a plea on August 12th, 2023, the Plaintiff explicitly advocated for "the implementation of clear and efficient accommodation and complaint procedures to promptly address any concerns that may arise during my academic journey." (see emial of August 12th, 2023, attached in text). However, the defendants responded with callous indifference, ignoring his reasonable request and instead imploring him to engage solely with them – the very perpetrators of the discrimination he sought to rectify.          This deplorable attempt to conceal their discriminatory conduct further exacerbated the denial of vital resources essential to his success – an overt violation of the ADA and RA's mandates, representing additional concrete harm.

This brazen attempt to conceal and impede the Plaintiff's access to lawful remedies under the ADA further compounds the litany of injurious acts already inflicted. By obstructing his efforts to voice grievances through proper channels, the Defendants not only breached their legal obligations but also revealed a disturbing disregard for the Plaintiff's fundamental civil rights as a student with disabilities.

Tragically, this willful pattern of discrimination appears deeply entrenched, as evidenced by the VCA's origins at John Jay College, suggesting a systemic failure to uphold the rights of students with disabilities as guaranteed by the ADA and RA – apparent institutional defiance enhancing the concrete harm imposed on the Plaintiff. His harrowing experience was not an isolated incident but a perpetuation of intolerable, unlawful practices for which the defendants must answer.

The injuries are tangible, the setbacks measurable and quantifiable – all inflicted through the defendants' willful disregard for federal disability laws, constituting concrete harm for which they cannot evade liability. Redirecting to a new major ill-suited to his talents and ambitions. Lost time and tuition.

A compromised GPA hindering future prospects. The irreversible theft of experiences that shape a college journey. All owing to the defendants' egregious discrimination. Defendants' conscionable, willful acts of discrimination in blatant violation of federal civil rights laws – conscious transgressions that inflicted concrete, irreparable harm for which undeniable liability exists.

## X. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court dismiss Defendants motion to dismiss in its entirety, and allow the case to proceed to discovery, together with such other and further relief as it deems just and proper.

**Dated: New York, New York**
**March 11, 2024**

Respectfully Submitted;

Franklin Mendez

**CC:**
**Christopher Coulston**
**CHRISTOPHER COULSTON**
**Assistant Attorney General**
**28 Liberty St.**
**New York, New York 10005**

26 of 26